# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. __11-60033-Cr-COOKE(s)____
21 U.S.C. § 846
21 U.S.C. § 856
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
21 U.S.C. § 853
18 U.S.C. § 2

UNITED STATES OF AMERICA,

Plaintiff,

v.

VINCENT "Vinny" COLANGELO,
NICHOLAUS "Nick" THOMAS,
RACHAEL BASS,
MICHAEL PLESAK,
JEREMIAH FLOWERS,
a/k/a "Tennessee,"
WAYNE RICHARDS,
SARA COGDILL, and
QUALITY GREEN COATINGS, INC.,

Defendants.

_____/

```
FILED by _____ D.C.

APR 1 2 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – FT. LAUD.
```

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Superseding Indictment unless stated otherwise herein below:

1. The Controlled Substances Act, 21 U.S.C. §§841 et. seq.(CSA) governs the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA makes it "unlawful for any person knowingly or intentionally ...

to manufacture, distribute, or dispense ... a controlled substance" or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and those controlled substances are then assigned to one of five schedules, Schedule I, II, III, IV, or V, depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. The term "Schedule I" means that the drug or other substance has at least some potential for abuse; the drug has no currently accepted medical use and lacks safety under medical supervision; no prescriptions may be written for Schedule I substances, and such substances are subject to production quotas by the DEA.

4. The term "Schedule II" means that the drug or other substance has a high potential for abuse; the drug has a currently accepted medical use with severe restrictions; and abuse of the drug or other substances may lead to severe psychological or physical dependence.

5. The term "Schedule III" means the drug or other substance has a high potential for abuse less than the drugs listed in Schedule II; the drug has a currently accepted medical use with severe restrictions; and abuse of the drug or other substances may lead to severe psychological or physical dependence.

6. The term "Schedule IV" means that the drug or other substance has a low potential for abuse relative to the drugs or other substances in Schedule III; the drug or other substance has a currently accepted medical use in treatment; and abuse of the drug or other substances may lead to limited physical dependence or psychological dependence relative to the drug or substances in Schedule III.

7. The term "Schedule V" means that the drug or other substance has a low potential for

-2-

abuse relative to the drugs or other substances in Schedule IV; the drug or other substance has a currently accepted medical use in treatment; and abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in Schedule IV.

8. Pursuant to the CSA and its implementing regulations, oxycodone is the generic name for a highly addictive prescription analgesic (pain relieving medication). The use of oxycodone in any form can lead to physical and/or psychological dependence, and abuse of the drug may result in addiction. It is classified as a Schedule II Controlled Substance. It is sold generically or under a variety of brand names, including oxycodone, Roxicodone, OxyContin, and Percocet. If legally prescribed for a legitimate medical purpose, these drugs are typically used to treat moderate to severe pain.

9. Demand for oxycodone has grown to epidemic proportions in South Florida and other parts of the United States where drug dealers can sell a 30 mg. oxycodone pill on the street for $10 to $30 or more.

10. Oxycodone and other Schedule II drugs have a high potential for abuse and can be crushed and snorted, or dissolved and injected, to get an immediate high. This abuse can lead to addiction, overdose, and sometimes death. The injection method of abuse of oxycodone (and other drugs) generally leaves highly visible scars and ulcers on a patient's arms.

11. Roxicodone, also known as "Roxy," is a brand name pill that contains oxycodone.

12. Percocet, also known as "Perc," is a brand name pill that contains oxycodone with acetaminophen.

13. Carisoprodol is a centrally-acting muscle relaxant that is not a federally controlled substance. Carisoprodol, however, is a Schedule IV controlled substance in the State of Florida.

Soma is the brand name for carisoprodol.

14. Pursuant to the CSA and its implementing regulations, hydrocodone is the generic name for an addictive prescription analgesic. The use of hydrocodone in any form can lead to physical and/or psychological dependence, and abuse of the agent may result in addiction. It is classified as a Schedule III Controlled Substance. It is sold generically or under a variety of brand names, including Vicodin, Lortab, Lorcet, and Norco. When hydrocodone is legally prescribed for a legitimate medical purpose, it is typically used to combat moderate to moderately severe pain.

15. Pursuant to the CSA and its implementing regulations, alprazolam is classified as a Schedule IV Controlled Substance, and is sold generically or under the brand name Xanax. When prescribed for a legitimate medical purpose, it typically is used to treat anxiety disorder, panic disorder, and anxiety caused by depression.

16. Medical practitioners authorized to prescribe or dispense controlled substances by the jurisdiction in which they are licensed to practice medicine are authorized under the CSA to write prescriptions for or otherwise dispense controlled substances if they are registered with the Attorney General of the United States. Such medical practitioners are each assigned a unique registration number by the Drug Enforcement Administration (DEA).

17. Under Chapter 21, Code of Federal Regulations, Section 1306.04(a), medical practitioners registered with the DEA cannot issue a prescription unless it is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice .... An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research [is] not a prescription within the meaning and intent of [the CSA], and the person knowingly filling such a purported prescription, as well as the person issuing it, [is] subject to the penalties provided for violations of the provisions relating to controlled

-4-

substances."

18. The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling or compounding necessary to prepare the substance for such delivery. The term "dispenser" means a practitioner who so delivers a controlled substance to an ultimate user or research subject. (21 U.S.C. §802(10)).

19. The term "distribute" means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. The term "distributor" means a person who so delivers a controlled substance or a listed chemical. (21 U.S.C. §802(11))

20. A controlled substance is prescribed by a physician in the usual course of a professional practice and, therefore, lawfully, if the substance is prescribed by the physician in good faith as part of his medical treatment of a patient in accordance with the standard of medical practice generally recognized and accepted in the United States.

21. The term "doctor shopping" refers to the practice of a patient requesting care from multiple physicians without making efforts to coordinate care or informing the physicians of the other prescribing physicians in order to divert the drugs to others or feed their own addiction to certain prescription drugs by faking or exaggerating the extent of their true condition, or both.

22. The term "sponsor," in reference to the "pill mill" community, is a person who pays for all expenses associated with another person's appointment at a pain clinic in exchange for all or a portion of the other person's medications after the appointment.

23. ScriptSure© is a physician-focused medical software program available to doctors in the State of Florida and elsewhere. It not only features an electronic prescription writing program, but it also is a physician's workstation, allowing physicians, physician assistant's, nurses and staff

to perform a multitude of tasks including ordering lab tests, writing referrals, and producing patient and physician notes. ScriptSure© creates an electronic record of all activities performed for every patient.

### Defendants

24. Defendant VINCENT "Vinny" COLANGELO ("COLANGELO") has no known medical education or background, but was the primary owner and manager of at least seven (7) pain management clinics and a pharmacy in Broward and Miami-Dade Counties in Florida, including Atlantic Medical Solutions ("Atlantic Medical"), located at 950 N Federal Highway in Pompano Beach, Florida; Seaside Pain Management Center ("Seaside Medical"), n/k/a Commercial Medical Group ("Commercial Medical"), located at 291 East Commercial Boulevard, Fort Lauderdale, Florida;   Broward Urgent Care ("Broward Urgent"), located at 1409 S.E. 1st Avenue, Fort Lauderdale, Florida; All Pain Management ("All Pain"), located at 3300 Griffin Road, Dania Beach, Florida; Friendly Urgent Care ("Friendly Urgent"), located at 3121 W. Hallandale Beach Boulevard, Suite 101, Pembroke, Florida; VIP Pain Center ("VIP Pain"), located at 13936 N.W. 7th Avenue, Miami, Florida; Urgent Care and Surgical Care Center of Fort Lauderdale, d/b/a "Integrated Medical Group," ("Integrated") located at 2040 N.E. 49th Street, Fort Lauderdale, Florida; and Friendly Pharmacy located at 1623 S. Andrews Ave, Fort Lauderdale, Florida 33316.  Ownership of these clinics was held in nominee names.

25.  Defendant NICHOLAUS "Nick" THOMAS ("THOMAS") has no known medical education or background, but was a co-owner and manager of Broward Urgent.

26. Defendant RACHAEL BASS ("BASS") has no known medical education or background but was a co-owner, officer and/or manager of Seaside Medical n/k/a Commercial Medical, Broward Urgent, All Pain and Friendly Pharmacy.

27.   Defendant MICHAEL PLESAK ("PLESAK") was employed as a manager of Commercial Medical and was responsible for programing and maintaining the office computers.

28. JEREMIAH FLOWERS ("FLOWERS") was employed at All Pain primarily as a triage technician and money courier for COLANGELO.

29. WAYNE RICHARDS ("RICHARDS") was employed at Commercial Medical as a triage technician and telemarketer.

30. SARA COGDILL ("COGDILL") was co-owner of VIP Pain Center and was an employee of Commercial Medical Group and served in a variety of capacities.

31.   QUALITY GREEN COATINGS, INC. ("QGCI"), was a Florida corporation incorporated on November 5, 2009, by BASS.  QGCI, located at 2300 East Atlantic Boulevard, Pompano Beach, Florida 33062, was a retailer of interior and exterior paints for commercial and residential use.

## COUNT 1

### (21 U.S.C. §§841, 846 and 856)

32.   Paragraphs 1 through 31 of the General Allegations section of this Superseding Indictment are re-alleged and incorporated fully herein by reference.

33.   From an unknown date, but at least beginning in or about October 2008 and continuing through on or about the date of this Superseding Indictment, in the Southern District of Florida, the defendants,

**VINCENT "Vinny" COLANGELO,**
**NICHOLAUS "Nick" THOMAS,**
**RACHAEL BASS,**
**MICHAEL PLESAK,**
**JEREMIAH FLOWERS,**
**a/k/a "Tennessee,"**
**WAYNE RICHARDS, and**
**SARA COGDILL,**

did knowingly and willfully combine, conspire, confederate and agree with each other and other persons, both known and unknown to the Grand Jury, to commit the following offenses:

1) to knowingly and intentionally distribute and possess with the intent to distribute quantities of controlled substances, primarily oxycodone, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 841(a)(1);

2) to knowingly and intentionally dispense and distribute, and cause to be dispensed and distributed, quantities of controlled substances, primarily oxycodone, a Schedule II Controlled Substance, not for a legitimate medical purpose and not in the usual course of professional practice, contrary to Title 21, United States Code, Section 841(a)(1);

3) to knowingly and intentionally open, lease, rent, use and maintain, and cause to be opened, leased, rented, used, and maintained, certain places for the purpose of distributing dispensing controlled substances unlawfully, primarily oxycodone, a Schedule II Controlled Substance, contrary to Title 21, United States Code, Section 856(a)(1).

### Purpose and Object of the Conspiracy

34. It was the purpose and object of the conspiracy for the Defendants **VINCENT "Vinny" COLANGELO, NICHOLAUS "Nick" THOMAS, RACHAEL BASS, MICHAEL PLESAK, JEREMIAH FLOWERS a/k/a "Tennessee," WAYNE RICHARDS, SARA COGDILL** and others to unlawfully enrich themselves by promoting, managing and operating pain management clinics that illegally distributed, dispensed and diverted controlled substances.

### Manner and Means of the Drug Conspiracy

The manner and means of this conspiracy included the following:

35. The Defendants did knowingly open, lease, rent, use, operate and maintain and cause to be opened, leased, rented, used, and maintained places of business, including but not limited to

-8-

Atlantic Medical, Seaside Medical, n/k/a Commercial Medical, All Pain, Broward Urgent, Friendly Urgent, Integrated and VIP Pain for the purpose of unlawfully distributing, dispensing and diverting and causing the unlawful distribution, disbursement and diversion of controlled substances.

36. The Defendants utilized nominees to hold corporate ownership of Atlantic Medical, Seaside Medical, n/k/a Commercial Medical, All Pain, Broward Urgent, Friendly Urgent and VIP Pain as well as the respective local business licenses.

37. The Defendant **VINCENT "Vinny" COLANGELO** purchased and utilized over 1,600 Internet domain names that were designed to capture the maximum number of Internet searches by prospective "patients" from throughout the State of Florida and the United States seeking access to pain medication and to direct the prospective "patients" to a telephone number and email address at Commercial Medical.

38. The Defendants attracted as many "patients" as possible to their pain clinics by advertising over the Internet. The Defendants also solicited over the telephone, promising excessive dosages of oxycodone, alprazolam (Xanax) and other addictive pain medications.

39. The Defendants required an immediate cash payment of $250 to $350 as a "clinic visit fee" for new in-state patients and greater amounts for out-of-state patients upon entry into their clinics. Follow-up in-state patients were charged a visitation fee of $200 to $300 and out-of-state follow-up patients were charged significantly more. Medical insurance, credit cards, checks or other forms of non-cash payment were not accepted.

40. The Defendants required new "patients" to obtain magnetic resonance imaging ("MRIs") before allowing them to be seen by a doctor.

41. The Defendants directed all their patients to F.M.I. in Fort Lauderdale to obtain magnetic resonance images ("MRIs") which the Defendants knew to be of inferior quality. Furthermore, the

Defendants knew that radiologists hired by F.M.I. to review their MRIs routinely interpreted the images over-aggressively, thereby enabling the pain clinic doctors to attempt to justify the prescription of highly addictive pain medications not for a legitimate medical purpose and not in the usual course of professional practice.

42.  The Defendants often made the patients wait for several hours to see a doctor, but patients were encouraged to pay an additional cash fee, referred to as "VIP," ranging from $100 to $500 to expedite the period of their wait proportionate to the amount of "VIP," bypassing "patients" ahead of them.

43.  The Defendants encouraged and accepted "sponsors" who brought one or more "patients"to subject pain clinics and paid for the patients' MRIs and all pain clinic fees in exchange for receiving all or a portion of the "patient's" prescription medications.

44.  The Defendants falsified and caused others to falsify patients' urine test results in exchange for a fee to facilitate and justify the maximum amounts of highly addictive pain medications prescribed and dispensed.

45.  The pain clinics' doctors were paid on a per-patient basis of between $50 and $75 per patient.  The Defendants encouraged the doctors to see as many patients as possible, as quickly as possible and to prescribe excessive dosages of the highly addictive pain medications of oxycodone, hydrocodone and alprazolam.

46.  To expedite the processing of prescriptions, the Defendants used or caused to be used the ScriptSure© software program to issue electronic prescriptions.

47.  The Defendants often asked patients to pay for their prescriptions before they were examined by a doctor.

48.  The Defendants would distribute and dispense and cause to be distributed and dispensed,

-10-

controlled substances that were not prescribed for a legitimate medical purpose, and not in the usual course of professional practice in one or more of the following manners:

      a. inadequate verification of the patient's medical complaint;

      b. cursory or no medical examinations by the attending doctors;

      c. no or inadequate patient medical history and no follow-up verification;

      d. incomplete or inadequate mental or physical examinations;

      e. insufficient dialogue with the patients regarding treatment options and risks and benefits of such treatments;

      f. primarily treating patients with highly addictive controlled substances while failing to consider other treatment options;

      g. failure to refer patients to specialists for treatment;

      h. "coaching" patients as to what to say in order to justify or attempt to justify the prescribing and dispensing of highly addictive drugs to the patients;

      i. lack of or inadequate diagnostic testing;

      j. writing prescriptions to patients who admitted the buying or receiving pills on the street;

      k. increasing the patients' dosages over time or switching to more powerful drugs;

      l. prescribing inappropriate combinations of drugs to patients;

      m. patients suggesting or directing the medications to be prescribed;

      n. treating a large number of patients who reside either out of the state or long distances from South Florida to obtain prescriptions for highly addictive controlled substances;

      o. directing patients to particular pharmacies in order to fill their prescriptions without attracting suspicion;

      p. prescribing highly addictive controlled substances to patients who complain of nebulous physical conditions, where lesser treatment options would be indicated.

      q. failing to assess the risk of abuse for individual patients;

r.  failing to monitor the patients' responses to the medication or compliance with medical usage;

s.  failing to consider the results of the patients' toxicology screens showing non-use of the medication prescribed, yet continuing to prescribe the controlled substance;

t.  failure to consider the patients' street use of drugs, as reflected by the fact that patients would frequently refer to the desired controlled substances by "street names", such as roxy's, blues, etc.;

u.  owners of the clinics are also patients of their clinics and receive prescriptions from the doctors they employ for highly addictive pain medications;

v. issuing prescriptions for highly addictive controlled substances to an  inordinately high percentage of patients in their 20's and 30's;

49.  Between January 1, 2009 and up to and including December 31, 2010, the  Defendants ordered and caused to be ordered over 660,000 dosage units of oxycodone from seven (7) different distributors to be dispensed through five (5) clinics.

50.  The Defendants ran what was, in essence, a "Pill Mill," which involved offering patients "Pain Management" by doing little more than writing prescriptions for narcotics and other controlled drugs the patients requested.   The prescriptions were illegal because they were not for a legitimate medical purpose, and not within the usual course of professional medical practice.

51.  It was further part of the conspiracy that the defendants hid and concealed and caused others to hide and conceal the nature of the illegal activity and the acts committed in furtherance thereof.

All in violation of Title 21, United States Code, Sections 846; and 841 (b)(1)©, 841(b)(1)(D); and Title 18, United States Code, Section 2.

## COUNT 2
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

50. Paragraphs 1 through 31 of the of the General Allegations section and Count 1 of this Superseding Indictment are re-alleged and incorporated fully herein by reference.

51. From on or about November 18, 2009 through at least on or about August 23, 2010, in the Southern District of Florida and elsewhere, the Defendants,

### VINCENT COLANGELO,
### MICHAEL PLESAK,
### RACHAEL BASS, and
### QUALITY GREEN COATINGS, INC.,

did knowingly and willfully combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, to wit: knowingly engage and attempt to engage in monetary transactions each of a value greater than $10,000, affecting interstate and foreign commerce, in criminally derived property, totaling approximately $4,284,600.52, such property having been derived from a specified unlawful activity, that is, the conspiracy charged in Count 1 of this Superseding Indictment and the distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### Purpose and Object of the Conspiracy

52. It was the purpose and object of the conspiracy, for the Defendants **VINCENT COLANGELO, MICHAEL PLESAK, RACHAEL BASS, QUALITY GREEN COATINGS, INC.** and others to unlawfully enrich themselves by converting the illegal proceeds generated from the pain management clinics into real and personal property to wit: real estate, bank accounts and exotic and vintage automobiles.

-13-

## Manner and Means of Money Laundering Conspiracy

The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

53. The Defendants deposited and caused to be deposited, cash or wire-transferred funds, or a combination thereof, to the seller's bank account.

54. The Defendants purchased and caused to be purchased, assets with cash, cashier's checks or credit cards, or a combination thereof, paid to the seller.

55. The Defendants deposited and caused to be deposited, cash into business bank accounts.

All in violation Title 18, United States Code, Section 1956(h).

### COUNTS 3 through 41
### Money Laundering
### (18 U.S.C. §§ 1957 and 2)

56. Paragraphs 1 through 31 of the of the General Allegations section and Count 1 of this Superseding Indictment are re-alleged and incorporated fully herein by reference.

On or about the dates specified below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**VINCENT COLANGELO,**
**NICHOLAUS THOMAS,**
**MICHAEL PLESAK,**
**RACHAEL BASS, and**
**QUALITY GREEN COATINGS, INC.,**

did knowingly engage and attempt to engage in monetary transactions affecting interstate and foreign commerce, by and through a financial institution, as specified below with respect to each count, each such transaction involving criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, the conspiracy charged in Count 1 of this Superseding Indictment and distribution of controlled substances, in violation of controlled

-14-

substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.:

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| 3. | 05/29/2009 | **VINCENT COLANGELO** | Defendant purchased a 1999 Dodge Viper, VIN 1B3ER69E1XV502950 for $39,995.35 consisting of two (2) $5,000 deposits by credit card and cash payment of $29,995.35 to the seller. |
| 4. | 09/02/2009 | **RACHAEL BASS** | Defendant purchased a 2006 Land Rover, VIN SALMF134X6A235103 for $39,300.00 in cash to the seller. |
| 5. | 09/29/2009 | **VINCENT COLANGELO** | Defendant purchased a 2002 Dodge Viper, VIN 1B3ER69EX2V102412 for $47,354.00 in cash to the seller. |
| 6. | 10/08/2009 | **VINCENT COLANGELO** | Defendant purchased a 2008 Ford Mustang, VIN 1ZVHT82H085104270 for $32,633.54 in cash to the seller. |
| 7. | 11/18/2009 | **VINCENT COLANGELO** | Defendant purchased a 1966 Chevrolet Corvette, VIN #194376S117455 for $70,000 consisting of a $1,000 deposit by credit card, a wire transfer of $44,410 from a Bank of America account XXXXX1755, $23,600 deposited directly to the sellers bank account and the payment of $990 cash to the seller. |
| 8. | 01/05/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $16,000 in cash into Bank of America Account # XXXXXXX3803 in the name of Quality Green Coatings, Inc. |
| 9. | 02/06/2010 | **VINCENT COLANGELO, RACHAEL BASS** | Defendants purchased a trailer park at 100 S.E. 10 Avenue, Okeechobee, Florida for $280,500.00 with $28,050 cash and two (2) cashier's checks 7455183 and 7403730 purchased with cash on February 4, 2010 and February 5, 2010 from Bank Of America. |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|-------------|---------------------|
| 10. | 02/22/2010 | **VINCENT COLANGELO** | Defendant purchased a 1969 Chevrolet Camaro, VIN 124379N546381 for $55,250 consisting of a $1,000 deposit by credit card and a wire transfer of $54,250 from Bank of America account ending with 1755, to the seller. |
| 11. | 03/02/2010 | **VINCENT COLANGELO** | Defendant purchased a 1970 Plymouth Barracuda VIN B523HOB262448 for $68,500.00 in cash deposited into seller's SunTrust bank account. |
| 12. | 03/15/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 1970 Ford Mustang, VIN 0505M113329 for $54,000 consisting of a $54,000 deposit to the seller's account at Comerica Bank. |
| 13. | 03/21/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 1970 Ford Mustang Mach 1 VIN#0805M135413 for $42,000 consisting of a $40,000 deposit to seller's account at Bank of America and a $2,000 credit card deposit. |
| 14. | 03/30/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 1992 Acura NSX VIN#JH4NA1159NT001249 for $82,595.00 consisting of a wire transfer of $82,595.00 to seller's account at Bank of America. |
| 15. | 04/17/2010 | **VINCENT COLANGELO, RACHAEL BASS** | Defendants purchased real estate located at 2355 S.W. 28 Street, Okeechobee, Florida for $32,450.00 with a cash deposit and a Bank of America cashier's check #7561733 for $26,970.38. The property was purchased without a lien. |
| 16. | 04/23/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 2007 Ford Mustang 1ZVFT92HX75263254 for $43,000 consisting of a $43,000 deposit to seller's account at PNC Bank . |
| 17. | 04/27/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 2005 Ford Mustang GT Ronaele VIN#1ZVHT82H755205849 for $22,500 consisting of a $22,500 deposit to seller's account at Bank of America. |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| 18. | 05/05/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 2010 Ford Mustang VIN#1VBP8CH4A5116596 for $68,000 consisting of four cash deposits to seller's account at SBC Bank. |
| 19. | 05/24/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 1930 Ford Classic Car VIN# A3443522 for $270,000 consisting a wire transfer to seller's account from PLESAK's account at Bank of America. |
| 20. | 05/26/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $45,000 in cash into Bank of America Account #XXXXXXXX3816 in the name of Quality Green Coatings, Inc. "Payroll Account." |
| 21. | 06/03/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $48,000 in cash into Bank of America Account #XXXXXXX2859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |
| 22. | 06/15/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $79,000 in cash into Bank of America Account #898023592859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |
| 23. | 06/22/2010 | **VINCENT COLANGELO** | Defendant purchased real estate located at 1417 Piney Road, Fort Meyers, Florida for $44,000.00. |
| 24. | 06/30/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $38,000 in cash into Bank of America Account #XXXXXXX2859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| 25. | 07/02/2010 | **VINCENT COLANGELO** | Defendant purchased a 2010 Dodge Viper, VIN 1B3AZ6JZ8AV100234 for $117,054.70 consisting of cashier's check no. ending with 6102 for $106,000, $10,000 in cash and a credit card charge for $1,054.70 to the seller. |
| 26. | 07/13/2010 | **VINCENT COLANGELO** | Defendant purchased a 2009 Mercedes-Benz SLR Mclaren, VIN WDDAK76F79M001872 for $334,769 consisting of a cashier's check for $194,769 and $140,000 in cash to the seller. |
| 27. | 07/13/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $18,000 in cash into Bank of America Account #XXXXXXX2859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |
| 28. | 7/16/2010 | **NICHOLAUS THOMAS** | Defendant sold a 2007 Mercedes-Benz S-Class, VIN #WDDNG71X37A067062 to the seller for $40,000.00 as a trade-in allowance. |
| 29. | 7/28/2010 | **NICHOLAUS THOMAS** | Defendant purchased a 2004 Daimler-Benz Maybach 57, VIN #WDBVF78J44A000494 for $115,395.00 consisting of $80,393.70 in cash plus a vehicle trade-in allowance from the seller. |
| 30. | 07/29/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $25,000 in cash into Bank of America Account #XXXXX2859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |
| 31. | 08/05/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $20,000 in cash into Bank of America Account #XXXXX2859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| 32. | 08/13/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $15,000 in cash into Bank of America Account #898023592859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |
| 33. | 08/13/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $15,000 in cash into Bank of America Account #898023593816 in the name of Quality Green Coatings, Inc. "Payroll Account." |
| 34. | 08/20/2010 | **VINCENT COLANGELO** | Defendant purchased real estate located at 12995 SW 40 Street, Davie, Florida for $850,000. The property was purchased without a lien. |
| 35. | 08/23/2010 | **VINCENT COLANGELO** | Defendant purchased real estate located at 360 NW 43 Avenue, Plantation, Florida for $184,000. The property was purchased without a lien. |
| 36. | 08/27/2010 | **VINCENT COLANGELO, QUALITY GREEN COATINGS, INC.** | Defendants deposited $39,600 in cash into Bank of America Account #XXXXXXXX2859 in the name of Quality Green Coatings, Inc. "Main Operating Account." |
| 37. | 09/20/2010 | **VINCENT COLANGELO** | Defendant purchased a 2010 Dodge Viper, VIN 1B3AZ6JZ1AV100236 for $120,200 consisting of $67,200 in cash and 3 credit card charges totaling $53,000 to the seller. |
| 38. | 10/19/2010 | **VINCENT COLANGELO** | Defendant purchased a 2007 Ford Mustang, VIN 1ZVHT88S375271630 for $39,523.54 in cash to the seller. |
| 39. | 11/10/2010 | **VINCENT COLANGELO** | Defendant purchased a 1973 Plymouth VIN BS23G3B350403 for $27,000 consisting a wire transfer to seller's account at Cortrust Bank. |

| COUNT | DATE | DEFENDANT(S) | MONETARY TRANSACTION |
|-------|------|--------------|----------------------|
| 40. | 11/15/2010 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchased a 1969 Chevrolet Camaro VIN#124379N608240 for $55,000 consisting of a cash deposit to seller's account at Bank of America. |
| 41. | 01/07/11 | **VINCENT COLANGELO, MICHAEL PLESAK** | Defendants purchase a 2010 572 cubic inch supercharged engine for $31,470 consisting of a cash deposit to seller's account at Bank of America. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## CRIMINAL FORFEITURE

The allegations of this Superseding Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

Forfeiture 1:

Upon conviction of the violation alleged in Count 1 of this Superseding Indictment, the defendants, **VINCENT "Vinny" COLANGELO, NICHOLAUS "Nick" THOMAS, RACHAEL BASS, MICHAEL PLESAK, JEREMIAH FLOWERS, a/k/a "Tennessee," WAYNE RICHARDS, and SARA COGDILL,** shall forfeit to the United States all of their respective right, title and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to such violation and any and all property used or intended to be used in any manner or part to commit or facilitate the commission of such violation, pursuant to Title 21, United States Code, Section 853. The property subject to forfeiture includes, but is not limited to, the following:

    A.    Approximately Twenty-Two Million, Three Hundred Ninety-Two Thousand, Three Hundred Ninety-One Dollars ($22,392,391.00) in U.S. currency, in that such sum in aggregate was received in exchange for the distribution of controlled substances or is traceable thereto.

B.    Real property:

      (1.)    12995 SW 40 Street Davie, FL. 33330
      (2.)    360 NW 43 Avenue Plantation, FL 33317
      (3.)    1417 Piney Road Fort Myers, FL  33903
      (4.)    910 SE 11th Street, Okeechobee, FL, 34974
      (5.)    2355 SW 28 Street, #70A, Okeechobee, FL 34974
      (6.)    100 SE 10 Avenue, Okeechobee, FL 34974

C.    U.S. currency:

      (a.)    $35,111.95 seized from Bank of America account number XXXXXXXX2972 in the name of VC Marketing, Inc., owned by VINCENT COLANGELO, located at Bank of America, 2335 East Atlantic Boulevard, Pompano Beach, Florida 33062, seized on 02-23-2011.

      (b.)    $6,509.27 seized from Bank of America account number XXXXXXXX3133 in the name of VC Marketing, Inc., owned by VINCENT COLANGELO, located at Bank of America, 2335 East Atlantic Boulevard, Pompano Beach, Florida 33062, seized on 02-23-2011.

      (©.)    $54,697.06 seized from Bank of America account number XXXXXXXX3572 in the name of Friendly Pharmacy, Inc., owned by VINCENT COLANGELO in the nominee name of Arthur Lubus, located at Bank of America, 12381 West Sunrise Boulevard, Plantation, Florida 33323, seized on 02-23-2011.

      (d.)    $41,599.40 seized from Bank of America account number XXXXXXXX1773 in the name of RACHAEL BASS ("Bass Account"), located at Bank of America located at North Parrott Ave., Okeechobee, Florida 34972, seized on 02-23-2011.

      (e.)    $30,043.60 seized from Bank of America account number XXXXXXXX7268 in the name of RACHAEL BASS - Regular Savings located at Bank of America, 21060 St. Andrews Blvd., Boca Raton, Florida 33433, seized on 02-23-2011.

      (f.)    $52.43 seized from Bank of America account number XXXXXXXX3275 in the name of NICHOLAUS THOMAS ("Thomas Account"), located at Bank of America, 901 SE 17th Street Causeway, Fort Lauderdale, Florida 33316, seized on 02-23-2011.

(g.)    $4.48 seized from Bank of America account number XXXXXXXX2859 in the name of QUALITY GREEN COATINGS, INC., owned by VINCENT COLANGELO, located at Bank of America located at 2335 East Atlantic Boulevard, Pompano Beach, Florida 33062, seized on 02-24-2011.

(h.)    $53,148.07 seized from JP Morgan Chase Bank, account number XXXXX9638, in the name of QUALITY GREEN COATINGS, INC., owned by VINCENT COLANGELO and Denise Tognoli, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(I.)    $6,301.70 seized from JP Morgan Chase Bank, account number XXXXX8558, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(j.)    $4,220.97 seized from JP Morgan Chase Bank, account number XXXXX6865, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(k.)    $1,378.58 seized from JP Morgan Chase Bank, account number XXXXX8150, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(l.)    $4,329.76 seized from JP Morgan Chase Bank, account number XXXXXX3005, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(m.)    $5,798.07 seized from JP Morgan Chase Bank, account number XXXXXX0003, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(n.)    $48.974.05 seized from JP Morgan Chase Bank, account number XXXXX6291, in the name of VC and LG Investments, Inc., owned by VINCENT COLANGELO and , located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(o.)   $10,413.00 seized from Broward Urgent Care located at 1409 SE 1ST Avenue, in Fort Lauderdale, Florida on 02-23-2011 owned by VINCENT COLANGELO and Nicholaus THOMAS.

(p.)   $5,414.00 seized from Commercial Medical Group located at 291 East Commercial Boulevard in Fort Lauderdale, Florida on 02-23-2011 owned by VINCENT COLANGELO.

(q.)   $389,398.00 seized from Safe Deposit Box # 3194 located at 3562 North Ocean Boulevard in Fort Lauderdale, Florida on 02-24-2011.  This box was registered in the name "Rousch Mustang", utilized by VINCENT COLANGELO.

(r.)   $3,120.00 seized from within the residence of NICHOLAUS THOMAS, located at 168 Isles of Venice Drive in Fort Lauderdale, Florida on 02-23-2011.

(s.)   $54,765.00 seized from within Commercial Medical Group located at 291 East Commercial Boulevard in Fort Lauderdale, Florida on 02-23-2011 owned by VINCENT COLANGELO.

(t.)   $69,700.00 seized from a Safe Deposit Box # 3192 located at 3562 North Ocean Boulevard in Fort Lauderdale, Florida, on 02-24-2011.  The box was registered in the name of "Chris Johnson" and utilized by NICHOLAUS THOMAS.

(u.)   $66,066.00 seized from within the residence of VINCENT COLANGELO located at 12995 SW 40th Street in Davie, Florida, on 02-23-2011.

(v.)   $40,424.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-24-2011.

(z.)   $9,832.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-23-2011.

(aa.)   $15,986.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-23-2011.

(bb.)  $17,300.00 seized from within the residence owned by VINCENT COLANGELO and utilized by MICHAEL PLESAK, located at 360 NW 43rd Street in Plantation, Florida, on 02-23-2011.

(cc.)  $2,860.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-23-2011.

C.  Vehicles and vessels:

(1.) 1966 Chevrolet Corvette VIN: 194376S117455, Fl Tag Q32AR
(2.) 1969 Chevrolet Corvette, VIN: 194679S718142, Fl Tag BJ5562
(3.) 1999 Dodge Viper, VIN: 1B3ER69E1XV502950, Fl Tag BGE4W
(4.) 2000 Dodge Viper, VIN: 1B3ER69E4YV604762, Fl Tag IEV42
(5.) 2002 Dodge Viper, VIN: 1B3ER69EX2V102412, Fl Tag 205TNK
(6.) 2004 Ford F-150 pickup truck, VIN: 1FTPW14594KB76130, Fl Tag 408YVB
(7.) 2008 Ford Mustang, VIN: 1ZVHT82H085104270, Fl Tag 745TNK
(8.) 2007 Mercedes Benz, VIN: WDBTK77G07T075016, Fl Tag 708WVB
(9.) 2008 Lamborghini Mercialago, VIN:ZHWBU37S98LA02811, Fl Tag 136XZL
(10.) 2008 Lamborghini Gallardo,  VIN: ZHWGU22T48LAO7253, no tag
(11.) 1970 Ford Mustang, VIN: OFOMM113329, no tag
(12.) 1969 Chevrolet Camaro, VIN: 124379N546381, no tag
(13.) 1970 Ford Mustang Mach I, VIN: ORO5M135413, no tag
(14.) 2010 Dodge Viper, VIN: 1B3AZ6JZ1AV100236, no tag
(15.) 2010 Dodge Viper, VIN: 1B3AZ6JZ8AV100234, Fl Tag AXBS09
(16.) 2009 Dodge Viper, VIN: 1B3JZ69Z19V500409, Fl Tag 707YQS
(17.) 2010 Ford Mustang, VIN: 1ZVBP8CH4A5116596, no tag
(18.) 2007 Ford Mustang,  VIN: 1ZVFT82HX75263254, Fl Tag S37G
(19.) 2005 Ford Mustang GT, VIN: 1ZVHT82H755205849, Fl Tag 059YKC
(20.) 2007 Ford Mustang, VIN: 1ZVHT88S375271630, Fl Tag 781TNK
(21.) 2010 Chevrolet Camaro, VIN: 2GIFS1EW9A9105272, Fl Tag 018NGT
(22.) 1930 Ford, VIN: A3443522, Fl Tag SRO5281
(23.) 1970 Plymouth Barracuda, VIN: B523HOB262448, no tag
(24.) 2000 Intrepid boat, Hull ID: IBW28095L900, FL 2875LE.
(25.) 1992 Acura NSX, VIN: JH4NA1159NT001249, Fl Tag PX84Z
(26.) 2009 Mercedes Benz McLaren, VIN: DDAK76F79M001872, Fl Tag AEFA59
(27.) 2007 Bentley convertible, VIN: SCBDR33W57C046072, Fl Tag ALD1986
(28.) 1997 Motorsports USA trailer, VIN: MT28102706, Fl Tag 027YKC
(29.) 2006 Ford Super duty F-250, VIN: FTSW21P66EC20284, Fl Tag 208YKC
(30.) 1969 Chevrolet Camaro SS, VIN: 124379N608240, Fl Tag BL3735
(31.) 1973 Plymouth, VIN: BS23G3B350403, Fl Tag 060YKC
(32.) 2008 Rolls Royce Phantom, VIN: SCA2D68598UX16097, Fl Tag ALU4624

(33.) 2011 Continental trailer, VIN: 1ZJBB1617BM069514, Fl Tag 279YKJ
(34.) 2009 Campwagon motorcycle, VIN: 2C9T19C44A2145047, Fl Tag 2612LF
(35.) 2009 BRP Mexico motorcycle, VIN: 2BXJAAA109V001593 , Fl Tag 2587LF
(36.) 2010 BRP Mexico motorcycle, VIN: 2BXJADA17AV000429 , Fl Tag 2589LF
(37.) 2011 Continental trailer, silver, VIN: 1ZJBB1211BM069515 , Fl Tag 280YKJ
(38.) 2006 Mercedes Benz SLR, VIN: WDDAJ76F36M001060, Fl Tag ALU4649
(39.) 2008 Chevrolet Cobalt, VIN: 1G1AL58FX87194436, Fl Tag ANT153
(40.) 2010 Chevrolet Camaro SS, VIN: 2G1FK1EJ8A9196068, Fl Tag ANT152
(41.) 2007 Chevrolet G3500 van, VIN: 1GCHG39U171111893, Fl Tag ANT151
(42.) 2007 Ford Econo E350 van, VIN: 1FDSE35L77DA09808, Fl Tag ANT150
(43.) 1998 Ford Econo E250 van, VIN: 1FTSE34F4WHA15248, Fl Tag ANT148
(44.) 2008 Kia Rio, VIN: KNADE123886382834, Fl Tag ANT149
(45.) 2002 Nissan Altima,  VIN: 1N4AL11D72C216146, Fl Tag ANT154
(46.) 2008 Sea-Doo 338A vessel, Hull ID: YDV26234D808, Florida no. FL8520PC
(47.) 2008 Sea-Doo 178A vessel, Hull ID: YDV60690E808, Florida no. FL8518PC
(48.) 2009 Sea-Doo 319A vessel, Hull ID: YDV07536D909, Florida no. FL8522PC
(49.) 2004 Lincoln Limousine, VIN: 1L1FM81W74Y641733, Fl Tag 984TPY.
(50.) 2009 Can Am A19B vessel, Hull ID: ABXJAAA109V001593, No Fl Tag.
(51.) 2010 Can Am B1AF vessel, Hull ID: ABXJADA17AV000429, No Fl Tag.
(52.) 2007 Mercedes Benz, VIN: WDDNG71X37A06706, Fl Tag 708WVB
(53.) 2004 Daimler AG Maybach 57, VIN: WDBVF78J44A000494, Fl Tag
BOSHOG5.
(54.) 2006 Land Rover Range Rover HSE,  VIN: SALME15476A214371, Fl Tag
B0SH0G3.

Pursuant to Title 21, United States Code, Section 853.

If any of the forfeitable property described in the forfeiture section of this superseding

indictment, as a result of any act or omission of the defendants **VINCENT "Vinny"**

**COLANGELO, NICHOLAUS "Nick" THOMAS, RACHAEL BASS, MICHAEL PLESAK,**

**JEREMIAH FLOWERS, a/k/a "Tennessee," WAYNE RICHARDS, and SARA  COGDILL**.

    (a)     cannot be located upon the exercise of due diligence;
    (b)     has been transferred or sold to, or deposited with, a third person;
    ©     has been placed beyond the jurisdiction of the Court;
    (d)     has been substantially diminished in value; or
    (e)     has been commingled with other property which cannot be subdivided without
difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section
853(p), to seek forfeiture of any other property of said defendant(s) up to the value of the above
forfeitable property.

Pursuant to Title 21, United States Code, Section 853.

Forfeiture 2:

Upon conviction of the violations alleged in Counts 2 through 41 of this Superseding Indictment, the defendant VINCENT "Vinny" COLANGELO, NICHOLAUS "Nick" THOMAS, RACHAEL BASS, MICHAEL PLESAK, **and QUALITY GREEN COATINGS, INC.**, shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly as a result of the said violation, including, but not limited to, the following:

A.  Approximately Twenty-Two Million, Three Hundred Ninety-Two Thousand, Three Hundred Ninety-One Dollars ($22,392,391.00) in U.S. currency, in that such sum in aggregate was received in exchange for the distribution of controlled substances or is traceable thereto.

B.  Real property:

   (1.)  12995 SW 40 Street Davie, FL. 33330
   (2.)  360 NW 43 Avenue Plantation, FL 33317
   (3.)  1417 Piney Road Fort Myers, FL  33903
   (4.)  910 SE 11th Street, Okeechobee, FL, 34974
   (5.)   2355 SW 28 Street, #70A, Okeechobee, FL 34974
   (6.)  100 SE 10 Avenue, Okeechobee, FL 34974

C.  U.S. currency:

   (a.)  $35,111.95 seized from Bank of America account number XXXXXXXX2972 in the name of VC Marketing, Inc., owned by VINCENT COLANGELO, located at Bank of America, 2335 East Atlantic Boulevard, Pompano Beach, Florida 33062,  seized on 02-23-2011.

   (b.)  $6,509.27 seized from Bank of America account number XXXXXXXX3133 in the name of VC Marketing, Inc., owned by VINCENT COLANGELO, located at Bank of America, 2335 East Atlantic Boulevard, Pompano Beach, Florida 33062, seized on 02-23-2011.

   (©.)  $54,697.06 seized from Bank of America account number XXXXXXXX3572 in the name of Friendly Pharmacy, Inc., owned by VINCENT COLANGELO in the nominee name of Arthur Lubus, located at Bank of America, 12381

-26-

West Sunrise Boulevard, Plantation, Florida 33323, seized on 02-23-2011.

(d.) $41,599.40 seized from Bank of America account number XXXXXXXX1773 in the name of RACHAEL BASS ("Bass Account"), located at Bank of America located at North Parrott Ave., Okeechobee, Florida 34972, seized on 02-23-2011.

(e.) $30,043.60 seized from Bank of America account number XXXXXXXX7268 in the name of RACHAEL BASS - Regular Savings located at Bank of America, 21060 St. Andrews Blvd., Boca Raton, Florida 33433, seized on 02-23-2011.

(f.) $52.43 seized from Bank of America account number XXXXXXXX3275 in the name of NICHOLAUS THOMAS (Thomas Account"), located at Bank of America, 901 SE 17th Street Causeway, Fort Lauderdale, Florida 33316, seized on 02-23-2011.

(g.) $4.48 seized from Bank of America account number XXXXXXXX2859 in the name of QUALITY GREEN COATINGS, INC., owned by VINCENT COLANGELO, located at Bank of America located at 2335 East Atlantic Boulevard, Pompano Beach, Florida 33062, seized on 02-24-2011.

(h.) $53,148.07 seized from JP Morgan Chase Bank, account number XXXXX9638, in the name of QUALITY GREEN COATINGS, INC., owned by VINCENT COLANGELO and Denise Tognoli, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(I.) $6,301.70 seized from JP Morgan Chase Bank, account number XXXXX8558, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(j.) $4,220.97 seized from JP Morgan Chase Bank, account number XXXXX6865, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(k.) $1,378.58 seized from JP Morgan Chase Bank, account number 946408150, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(l.) $4,329.76 seized from JP Morgan Chase Bank, account number XXXXXX3005 in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(m.) $5,798.07 seized from JP Morgan Chase Bank, account number XXXXXX0003, in the name of VINCENT COLANGELO, located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(n.) $48.974.05 seized from JP Morgan Chase Bank, account number XXXXX6291, in the name of VC and LG Investments, Inc., owned by VINCENT COLANGELO and , located at JP Morgan Chase Bank, located at 2401 East Atlantic Boulevard, Pompano Beach, FL 33062, seized on 04-12-2011.

(o.) $10,413.00 seized from Broward Urgent Care located at 1409 SE 1ST Avenue, in Fort Lauderdale, Florida on 02-23-2011 owned by VINCENT COLANGELO and NICHOLAUS THOMAS.

(p.) $5,414.00 seized from Commercial Medical Group located at 291 East Commercial Boulevard in Fort Lauderdale, Florida on 02-23-2011 owned by VINCENT COLANGELO.

(q.) $389,398.00 seized from Safe Deposit Box # 3194 located at 3562 North Ocean Boulevard in Fort Lauderdale, Florida on 02-24-2011. This box was registered in the name "Rousch Mustang", utilized by VINCENT COLANGELO.

(r.) $3,120.00 seized from within the residence of NICHOLAUS THOMAS located at 168 Isles of Venice Drive in Fort Lauderdale, Florida on 02-23-2011.

(s.) $54,765.00 seized from within Commercial Medical Group located at 291 East Commercial Boulevard in Fort Lauderdale, Florida on 02-23-2011 owned by VINCENT COLANGELO.

(t.) $69,700.00 seized from a Safe Deposit Box # 3192 located at 3562 North Ocean Boulevard in Fort Lauderdale, Florida, on 02-24-2011. The box was registered in the name of "Chris Johnson" and utilized by NICHOLAUS THOMAS.

(u.) $66,066.00 seized from within the residence of VINCENT COLANGELO located at 12995 SW 40th Street in Davie, Florida, on 02-23-2011.

(v.) $40,424.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-24-2011.

(z.) $9,832.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-23-2011.

(aa.) $15,986.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-23-2011.

(bb.) $17,300.00 seized from within the residence owned by VINCENT COLANGELO and occupied by MICHAEL PLESAK located at 360 NW 43rd Street in Plantation, Florida, on 02-23-2011.

(cc.) $2,860.00 seized from within the residence of RACHAEL BASS and VINCENT COLANGELO located at 620 NE 2nd Street in Pompano Beach, Florida, on 02-23-2011.

C.   Vehicles and vessels:

(1.) 1966 Chevrolet Corvette VIN: 194376S117455, Fl Tag Q32AR
(2.) 1969 Chevrolet Corvette, VIN: 194679S718142, Fl Tag BJ5562
(3.) 1999 Dodge Viper, VIN: 1B3ER69E1XV502950, Fl Tag BGE4W
(4.) 2000 Dodge Viper, VIN: 1B3ER69E4YV604762, Fl Tag IEV42
(5.) 2002 Dodge Viper, VIN: 1B3ER69EX2V102412, Fl Tag 205TNK
(6.) 2004 Ford F-150 pickup truck, VIN: 1FTPW14594KB76130, Fl Tag 408YVB
(7.) 2008 Ford Mustang, VIN: 1ZVHT82H085104270, Fl Tag 745TNK
(8.) 2007 Mercedes Benz, VIN: WDBTK77G07T075016, Fl Tag 708WVB
(9.) 2008 Lamborghini Mercialago,VIN:ZHWBU37S98LA02811, Fl Tag 136XZL
(10.) 2008 Lamborghini Gallardo, VIN: ZHWGU22T48LAO7253, no tag
(11.) 1970 Ford Mustang, VIN: OFOMM113329, no tag
(12.) 1969 Chevrolet Camaro, VIN: 124379N546381, no tag
(13.) 1970 Ford Mustang Mach I, VIN: ORO5M135413, no tag
(14.) 2010 Dodge Viper, VIN: 1B3AZ6JZ1AV100236, no tag
(15.) 2010 Dodge Viper, VIN: 1B3AZ6JZ8AV100234, Fl Tag AXBS09
(16.) 2009 Dodge Viper, VIN: 1B3JZ69Z19V500409, Fl Tag 707YQS
(17.) 2010 Ford Mustang, VIN: 1ZVBP8CH4A5116596, no tag
(18.) 2007 Ford Mustang,  VIN: 1ZVFT82HX75263254, Fl Tag S37G

(19.) 2005 Ford Mustang GT, VIN: 1ZVHT82H755205849, Fl Tag 059YKC
(20.) 2007 Ford Mustang, VIN: 1ZVHT88S375271630, Fl Tag 781TNK
(21.) 2010 Chevrolet Camaro, VIN: 2GIFS1EW9A9105272, Fl Tag 018NGT
(22.) 1930 Ford, VIN: A3443522, Fl Tag SRO5281
(23.) 1970 Plymouth Barracuda, VIN: B523HOB262448, no tag.
(24.) 2000 Intrepid boat, Hull ID: IBW28095L900, FL 2875LE.
(25.) 1992 Acura NSX, VIN: JH4NA1159NT001249, Fl Tag PX84Z
(26.) 2009 Mercedes Benz McLaren, VIN: DDAK76F79M001872, Fl Tag AEFA59
(27.) 2007 Bentley convertible, VIN: SCBDR33W57C046072, Fl Tag ALD1986
(28.) 1997 Motorsports USA trailer, VIN: MT28102706, Fl Tag 027YKC
(29.) 2006 Ford Super duty F-250, VIN: FTSW21P66EC20284, Fl Tag 208YKC
(30.) 1969 Chevrolet Camaro SS, VIN: 124379N608240, Fl Tag BL3735 .
(31.) 1973 Plymouth, VIN: BS23G3B350403, Fl Tag 060YKC
(32.) 2008 Rolls Royce Phantom, VIN: SCA2D68598UX16097, FL Tag ALU4624
(33.) 2011 Continental trailer, VIN: 1ZJBB1617BM069514, Fl Tag 279YKJ
(34.) 2009 Campwagon motorcycle, VIN: 2C9T19C44A2145047, Fl Tag 2612LF
(35.) 2009 BRP Mexico motorcycle, VIN: 2BXJAAA109V001593 , Fl Tag 2587LF
(36.) 2010 BRP Mexico motorcycle, VIN: 2BXJADA17AV000429 , Fl Tag 2589LF
(37.) 2011 Continental trailer, silver, VIN: 1ZJBB1211BM069515 , Fl Tag 280YKJ
(38.) 2006 Mercedes Benz SLR, VIN: WDDAJ76F36M001060, Fl Tag ALU4649
(39.) 2008 Chevrolet Cobalt, VIN: 1G1AL58FX87194436, Fl Tag ANT153
(40.) 2010 Chevrolet Camaro SS, VIN: 2G1FK1EJ8A9196068, Fl Tag ANT152
(41.) 2007 Chevrolet G3500 van, VIN: 1GCHG39U171111893, Fl Tag ANT151
(42.) 2007 Ford Econo E350 van, VIN: 1FDSE35L77DA09808, Fl Tag ANT150
(43.) 1998 Ford Econo E250 van, VIN: 1FTSE34F4WHA15248, Fl Tag ANT148
(44.) 2008 Kia Rio, VIN: KNADE123886382834, Fl Tag ANT149
(45.) 2002 Nissan Altima, VIN: 1N4AL11D72C216146, Fl Tag ANT154
(46.) 2008 Sea-Doo 338A vessel, Hull ID: YDV26234D808, Florida no. FL8520PC
(47.) 2008 Sea-Doo 178A vessel, Hull ID: YDV60690E808, Florida no. FL8518PC
(48.) 2009 Sea-Doo 319A vessel, Hull ID: YDV07536D909, Florida no. FL8522PC
(49.) 2004 Lincoln Limousine, VIN: 1L1FM81W74Y641733, Fl Tag 984TPY.
(50.) 2009 Can Am A19B vessel, Hull ID: ABXJAAA109V001593, No Fl Tag
(51.) 2010 Can Am B1AF vessel, Hull ID: ABXJADA17AV000429, No Fl Tag
(52.) 2007 Mercedes Benz, VIN: WDDNG71X37A06706, Fl Tag 708WVB
(53.) 2004 Daimler AG Maybach 57, VIN: WDBVF78J44A000494, Fl Tag BOSHOG5.
(54.) 2006 Land Rover Range Rover HSE, VIN: SALME15476A214371, Fl Tag B0SH0G3.

Pursuant to Title 18, United States Code, Section 982(a)(2).

If any of the forfeitable property described in the forfeiture section of this superseding

indictment, as a result of any act or omission of the defendants **VINCENT "Vinny"**

**COLANGELO, NICHOLAUS "Nick" THOMAS, RACHAEL BASS, MICHAEL PLESAK,**

**JEREMIAH FLOWERS, a/k/a "Tennessee," WAYNE RICHARDS, SARA COGDILL, and**

**QUALITY GREEN COATINGS, INC.,**

      (a)     cannot be located upon the exercise of due diligence;
      (b)     has been transferred or sold to, or deposited with, a third person;
      (c)     has been placed beyond the jurisdiction of the Court;
      (d)     has been substantially diminished in value; or
      (e)     has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(a)(1), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

      All pursuant to  Title 18 United States Code, Section  982 and Title 21 United States Code,

Section 853.

A TRUE BILL

_____
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
SCOTT H. BEHNKE
ASSISTANT UNITED STATES ATTORNEY

_____
GREGORY B. TORTELLA
SPECIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE

_____
BRENT S. TANTILLO
ASSISTANT UNITED STATES ATTORNEY

-31-

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA           CASE NO.  11-60033-CR-COOKE(s)

v.

                                   **CERTIFICATE OF TRIAL ATTORNEY***

**Vincent "Vinny" Colangelo,**
**Nicholaus "Nick" Thomas,**
**Rachael Bass,**
**Michael Plesak,**
**Jeremiah Flowers,**
**a/k/a "Tennessee,"**
**Wayne Richards,**
**Sara Cogdill, and**
**Quality Green Coatings, Inc.,**

_____ /
                      **Defendants.**

**Superseding Case Information:**

**Court Division:** (Select One)          New Defendant(s)          Yes __X__   No ____
                                          Number of New Defendants        2
___ Miami  ____ Key West                  Total number of counts         41
_X_ FTL    ____ WPB    ____ FTP

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:      (Yes or No)          __NO__
    List language and/or dialect          _____

4.  This case will take        _60_    days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
       (Check only one)                        (Check only one)

       I     0 to  5 days        _____     Petty      _____
       II    6 to 10 days        _____     Minor      _____
       III   11 to 20 days       _____     Misdem.    _____
       IV    21 to 60 days       __X__       Felony     __X__
       V     61 days and over    _____

6.  Has this case been previously filed in this District Court?  (Yes or No)          __Yes__
    If yes:
    Judge:  Marcia G. Cooke                 Case No.      11-60033-CR-COOKE
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?  ____ (Yes or No)      __NO__
    If yes:
    Magistrate Case No.                     _____
    Related Miscellaneous numbers:          _____
    Defendant(s) in federal custody as of   02/22/2011
    Defendant(s) in state custody as of     _____
    Rule 20 from the _____    District of  _____

    Is this a potential death penalty case? (Yes or No)      __NO__

7.  Does this case originate from a matter pending in the U.S. Attorney's Office prior to
    October 14, 2003?        _____    __X__ No

8.  Does this case originate from a matter pending in the Narcotics Section (Miami)  prior to
    September 1, 2007?        Yes  _____   No      X

                                   SCOTT H. BEHNKE
                                   ASSISTANT UNITED STATES ATTORNEY
                                   Court I.D. No. A5500005

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** SARA COGDILL          **Case No:**      11-60033-CR-COOKE(s)

**Count #: 1**

Conspiracy to Distribute Oxycodone
 21 U.S.C. §§841, 846

**\* Max.Penalty:**    Not more than Twenty (20) years' imprisonment; up to $1 million fine; and Three (3) years' supervised
release.

**Count #:**

**\* Max.Penalty:**

Count  #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures
that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** QUALITY GREEN COATINGS, INC. **Case No:** 11-60033-CR-COOKE(s)

**Count #: 2**

Money Laundering
 18 U.S.C. §1956(h)

**\* Max.Penalty:** Imprisonment of up to Ten (10) years; a fine of up to $250,000 or twice the amount of the criminally derived property involved in the transaction; and Three ( 3) years' supervised release.

**Counts #: 3 - 41**
Money Laundering
 18 U.S.C. §1957 and 2

**\* Max.Penalty:** Imprisonment of up to Ten (10) years; a fine of up to $250,000 or twice the amount of the criminally derived property involved in the transaction; and Three ( 3) years' supervised release.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**